# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### WINCHESTER DIVISION

| | | |
|---|---|---|
| LAUREN EWING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 4:23-CV-00062 |
| | ) | |
| VGW, LTD., VGW HOLDINGS US, | ) | |
| INC., VGW US, INC., VGW | ) | ORAL ARGUMENT |
| LUCKYLAND, INC. | ) | REQUESTED |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................. 4

    A.    The Plain Language of the Statute Does Not Permit Plaintiff to Bring a Mass Claim for Recovery of the Alleged Losses of Everyone in the Entire State........................................................................................................................... 5

    B.    The Historical Purpose of the Statute Confirms that the Legislature Never Intended the Statute to Allow Mass Claims to Recover Strangers' Losses ........... 8

    C.    The Case Law Further Demonstrates that Mass Claims Are Not Permitted ....... 11

    D.    The Legislature Cannot Have Intended Mass Claims to Be Permitted Under the Statute Because Such Claims Would Violate the Due Process Rights of the Losing Gamblers' Family Members for Whom Recovery is Intended........................................................................................................................ 13

    CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................4

*B. & V. Distrib. Co., Inc. v. Dottore Cos., LLC*,
   278 F. App'x 480 (6th Cir. 2008) ....................................................................4

*Berkebile v. Outen*,
   426 S.E.2d 760 (S.C. 1993) ...........................................................................10

*Biden v. Neb.*,
   143 S. Ct. 2355 (2023) ...................................................................................13

*Coles v. Morrow*,
   128 Tenn. 550 (1914) .....................................................................................12

*Crotty v. Flora*,
   676 S.W.3d 589 (Tenn. 2023) ........................................................................10

*Davis-Kidd Booksellers, Inc. v. McWherter*,
   866 S.W.2d 520 (Tenn. 1993) ........................................................................13

*Dunn v. Bell*,
   85 Tenn. 581 (1887) .......................................................................................12

*Fahrner v. Tiltware LLC*,
   2015 WL 1379347 (S.D. Ill. Mar. 24, 2015) ..............................................7, 12

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) .......................................................................................13

*Forrest v. Grant*,
   79 Tenn. 305 (1883) ..................................................................................11, 12

*Funliner of Ala., L.L.C. v. Pickard*,
   873 So. 2d 198 (Ala. 2003) ............................................................................12

*Galaria v. Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) .....................................................................4

*Hall v. McCandless*,
   14 Tenn. App. 528 (1931) ..............................................................................12

*Higgenbottom v. Continental Cas. Co.*,
    1994 WL 312871 (Tenn. Ct. App. July 1, 1994) ....................................................7

*Humphrey v. Viacom, Inc.*,
    2007 WL 1797648 (D.N.J. June 20, 2007) ................................................. *passim*

*In re Kaliyah S.*,
    455 S.W.3d 533 (Tenn. 2015)................................................................5, 6

*Keysight Techs., Inc. v. Nanomechanics, Inc.*,
    2017 WL 10434023 (E.D. Tenn. Apr. 20, 2017) ....................................................4

*Kyle v. Williams*,
    98 S.W.3d 661 (Tenn. 2003)................................................................5, 8

*Langone v. Kaiser*,
    2013 WL 5567587 (N.D. Ill. Oct. 9, 2013)....................................................7, 12

*Lawson v. Hawkins Cnty.*,
    661 S.W.3d 54 (Tenn. 2023)................................................................10

*Lyons v. Rasar*,
    872 S.W.2d 895 (Tenn. 1994)................................................................5

*Mills v. Zynga, Inc.*,
    2023 WL 5198511 (N.D. Ala. 2023) ........................................................8

*Moreno v. City of Clarksville*,
    479 S.W.3d 795 (Tenn. 2015)................................................................11

*Nat'l Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*,
    578 S.W.3d 26 (Tenn. Ct. App. 2018) ....................................................6, 7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................14

*Pickard v. Berryman*,
    24 Tenn. App. 263 (1939)................................................................12

*Roberts v. Hamer*,
    655 F.3d 578 (6th Cir. 2011) ................................................................4

*Sonnenberg v. Oldford Grp., Ltd.*,
    2015 WL 1379505 (S.D. Ill. Mar. 24, 2015) ....................................................7, 12

*State v. Black*,
    897 S.W.2d 680 (Tenn. 1995)................................................................10

*State v. Deberry,*
    651 S.W.3d 918 (Tenn. 2022)........................................................................10

*United States v. Cooper Corp.,*
    312 U.S. 600 (1941).................................................................................13

*VGW Holdings Ltd., et al. v. Murnaghan,*
    No. 1:23-cv-13160, ECF No. 1-2..................................................................3

*Whiteside v. Tabb's Ex'rs,*
    3 Tenn. 383 (1813)...................................................................................11

*Wright v. Dep't of Ala. Veterans of Foreign Wars,*
    2010 WL 11569414 (N.D. Ala. Mar. 24, 2010) ............................................12

**Statutes**

Ala. Code § 8-1-150(b)..................................................................................8, 9

Ga. Code § 13-8-3(b) .........................................................................................9

Ill. Comp. Stat. 5/28-8(b)...................................................................................9

Ky. Rev. Stat. Ann. § 372.040 ...........................................................................9

Mass. Gen. Laws ch. 137 § 1 ..........................................................................3, 9

N.J. Rev. Stat. § 2A:40-6 ...................................................................................9

S.C. Code Ann. § 32-1-20...................................................................................9

Tenn. Code § 29-19-104................................................................................5, 14

Tenn. Code § 29-19-105 ..........................................................................*passim*

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ....................................................................................................13

Fed. R. Civ. P. 12(b)(6)........................................................................1, 2, 3, 14

G. Robert Blakey, *The Development of the Law of Gambling 1776-1976* (Sept. 1976), *available at* https://www.ojp.gov/pdffiles1/Digitization/37369NCJRS.pdf (citing "Act of April 25, 1721, ch. 4, 2 (1702-1745), Laws of N.H. at 358-59"............................10

Op. Tenn. Att'y Gen. No. 04-046, 2004 WL 789813 (2004) ....................................9, 11

Case 4:23-cv-00062-CLC-SKL   Document 22   Filed 01/22/24   Page 5 of 22   PageID #: 167

Ronald J. Rychlak, *The Introduction of Casino Gambling: Public Policy and the Law*, 64 MISS. L.J. 291 (1995) ................................................................................................9

Defendants VGW Holdings Ltd. (incorrectly named in the complaint as VGW, Ltd.), VGW Holdings US, Inc., VGW US, Inc., and VGW Luckyland, Inc. (collectively, "VGW") move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

In an unprecedented invocation of an 1858 Tennessee anti-gambling statute, Plaintiff seeks to recover all amounts that *everyone in Tennessee* spent on VGW's online casino-themed social video games over the past year, under the specious theory that VGW's games are illegal "gambling." VGW's games are *not* gambling, but that issue is not relevant to this motion.

The Court should dismiss the complaint for failure to state a claim upon which relief may be granted. Tennessee Code § 29-19-105 does not grant Plaintiff a right of action to sue for recovery of *everyone's losses in the state*. The plain language of the statute, its historical purpose, and its interpretation and application by the Tennessee Attorney General and Tennessee courts, *all* confirm that the statute only permits claims to recover the losses of an *individual identified gambler*, so that the money can be returned to *that* gambler's *spouse*, *children*, or other *family*. Indeed, in the nearly *two centuries* that § 29-19-105 (through its predecessor statute) has been on the books, no Tennessee court has *ever* allowed a plaintiff to bring a mass claim to recover the gambling losses of everyone in this state. Nor has any court allowed an individual plaintiff to make such a claim under any other state's similar statute.

Moreover, when the statute was first enacted in 1858, the concept of a "mass" or group claim did not even exist, making it wholly anachronistic to impute such a reading to the statute now. In fact, doing so would violate the well-established canon of statutory construction in Tennessee that statutes must be interpreted as the legislature would have understood the text *at the time of enactment*. Finally, even if the statute were ambiguous as to whether it permits

_____

[1] VGW has filed, simultaneously herewith, a motion to compel arbitration of Plaintiff's claim.

Plaintiff to bring a mass claim for recovery of thousands of total strangers' alleged losses (it clearly does not), Tennessee law prohibits reading such an extraordinary implied right into the statute, including because it would infringe upon the due process rights of the very people whom the statute was enacted to protect: the losing gambler's spouse, children, or other family.

Accordingly, the Court should dismiss Plaintiff's claim—which seeks an unavailable recovery based on a distortion of § 29-19-105's statutory text and legislative purpose—with prejudice pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS

VGW specializes in the development and publication of online casino-themed social video games, including the slot-themed games depicted in the complaint. *See* Declaration of Michael Thunder ("Thunder Decl.") ¶ 4. VGW's games are ***free to play*** and ***never*** require the payment of money. *Id.* ¶ 5. Nonetheless, Plaintiff claims that the games are illegal gambling.

Plaintiff alleges that "[c]ustomers initially receive some free coins to play the games," and "[i]f they win, they win additional coins allowing them to play longer," but if they lose and "run[] out of coins entirely, they must spend real money to purchase coins if they wish to continue playing the game with full functionality." Compl. ¶ 15. In fact, this allegation is ***false***. Players of VGW's games have always been able to obtain additional coins without payment. Thunder Decl. ¶ 5. For example, the games provide users with more coins as part of a daily log-in bonus. *Id*. Moreover, since at least August 2022, players who exhaust their coin balances are immediately given more free coins so they can continue playing the games. *Id*.

Plaintiff's counsel is well aware of this from their history of repeatedly suing VGW on the same theory without success. Indeed, Plaintiff's counsel has brought ***dozens*** of arbitrations against VGW and other similar companies, asserting the same "mass" claim to recover the total amounts spent by players in various states under similar statutes. Every mass claim that

2

Plaintiff's counsel has asserted against VGW in arbitration has been dismissed, including, most recently, a claim under Massachusetts' similar statute.[2]  The Massachusetts arbitrator dismissed Plaintiff's counsel's mass claim with prejudice because, among other reasons, "[n]owhere in" the text of the Massachusetts statute "is there an indication that a single 'other person' could sue to recover what everyone else in Massachusetts lost.  Such an extraordinary right requires far more specificity than is contained in Ch. 137," which, by its terms, "does not give [a third party] the right to sue for the losses of more than one gambler."  *VGW Holdings Ltd., et al. v. Murnaghan*, No. 1:23-cv-13160, ECF No. 1-2 (Decision on Threshold Legal Issues) at 6-7 (D. Mass.).

Faced with dismissal after dismissal in arbitration, Plaintiff's counsel devised a new strategy to sue VGW and others in court on behalf of alleged non-players, under the theory that non-players are not subject to the arbitration agreements in VGW's and others' terms of service. Plaintiff's counsel first filed suit in Alabama, and then filed this action in Tennessee state court on November 13, 2023.  Plaintiff alleges that the games are unlawful gambling under Tennessee law, and that she is entitled to recover all amounts that ***everyone in Tennessee*** spent on the games over the past year, ostensibly pursuant to Tennessee Code § 29-19-105.  Compl. ¶¶ 2, 13-14, 25.  Under that statute, if a gambler who loses money on illegal gambling does not timely bring suit to recover his or her losses under Tennessee Code § 29-19-104,[3] "[a]ny other person may recover the amount of such money, thing, or its value, by action for the use of the spouse;

[2] Mass. Gen. Laws ch. 137 § 1 (stating that if the losing gambler does not timely sue to recover his or her losses, "any other person may sue for and recover in tort treble the value thereof").

[3] Tenn. Code § 29-19-104 ("Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days from the time of such payment or delivery.").

or, if no spouse, the child or children; and, if no child or children, the next of kin of the loser." Tenn. Code § 29-19-105.

VGW removed the action to this Court on December 19, 2023. Plaintiff filed a motion to remand on January 12, 2024. The parties proposed that VGW's response to the complaint be stayed pending a ruling on the remand motion, but the Court denied that request and ordered VGW to respond by January 22, 2024. In addition to this motion to dismiss, VGW has also filed, simultaneously herewith, a motion to compel arbitration of Plaintiff's claim.

## LEGAL STANDARD

This Court must dismiss a complaint where the allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as here, the "plaintiff lacks statutory standing—in other words, does not have a cause of action—the proper course is to dismiss for failure to state a claim." *Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384, 391 (6th Cir. 2016); *see also Roberts v. Hamer,* 655 F.3d 578, 581 (6th Cir. 2011) ("Where a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction."). A dismissal for lack of statutory standing may be granted "with prejudice." *B. & V. Distrib. Co., Inc. v. Dottore Cos., LLC,* 278 F. App'x 480, 488 (6th Cir. 2008); *see also Keysight Techs., Inc. v. Nanomechanics, Inc.,* 2017 WL 10434023, at *2 (E.D. Tenn. Apr. 20, 2017) (citing *B. & V.* and upholding 12(b)(6) dismissal with prejudice for lack of statutory standing).

## ARGUMENT

Plaintiff's complaint fails to state a claim under § 29-19-105 because the statute only grants Plaintiff a right of action to recover the gambling losses of ***an individual identified***

*gambler*, so that she can return the money to ***that gambler's family***.  The statute does not grant Plaintiff a right of action to assert a mass claim for recovery of the gambling losses of ***everyone in the state***.  This is clear from the statute's plain text, the historical purpose of the statute (including a Tennessee Attorney General opinion interpreting the statute), and relevant case law.

      **A.**      **The Plain Language of the Statute Does Not Permit Plaintiff to Bring a Mass Claim for Recovery of the Alleged Losses of Everyone in the Entire State**

Under Tennessee law, "the guiding principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."  *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994).  "Legislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used."  *Kyle v. Williams*, 98 S.W.3d 661, 664 (Tenn. 2003).  Indeed, "[a] statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says."  *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015).  The Court must also "look to the entire statute in order to avoid any forced or subtle construction of the pertinent language."  *Lyons*, 872 S.W.2d at 897.  "Accordingly," the Supreme Court of Tennessee has instructed, "statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute."  *Id.*

Tennessee Code § 29-19-105 works in tandem with § 29-19-104, and under Tennessee law, the two sections must be read together to determine their intended scope and meaning.

Under § 29-19-104, a person who loses money on illegal gambling has the right to sue for recovery of his or her losses within 90 days.  *See* Tenn. Code § 29-19-104 ("Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days" of the payment).

If the loser does not bring suit within 90 days, § 29-19-105 permits "[a]ny other person" to step into the loser's shoes and sue to recover the money lost by the loser, "for the use of" the spouse, children, or other family "of the loser." Tenn. Code § 29-19-105 ("Any other person may, after the expiration of the ninety (90) days, and within twelve (12) months thereafter, recover the amount of such money, thing, or its value, by action for the use of the spouse; or, if no spouse, the child or children; and, if no child or children, the next of kin of the loser.").

Thus, by its plain terms, § 29-19-105 only permits Plaintiff to recover the losses of an *identified* "*loser*" who did not sue under § 29-19-104, to return the money to the closest family member of "*the loser*." Under any "natural[ ] and reasonabl[e]" reading, the statute's plain text does *not* say that "any other person" may assert a "mass" claim to recover the losses of *everyone in the state*. *In re Kaliyah S.*, 455 S.W.3d at 552. If the Tennessee legislature intended to allow a third party to recover the losses of thousands of unknown and unidentified strangers, the legislature would not have stated that an action may be brought under § 29-19-105 "for the use of . . . the spouse," "the child or children," or "the next of kin of *the loser*." Grammar matters and "in construing statutes, we must consider the grammar employed by the legislature." *Nat'l Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 35 (Tenn. Ct. App. 2018).

Here, the legislative intention in choosing between the singular and plural within the same provision is unmistakable. The statute says "any other person" may bring an action to recover the amount lost by "*the* loser," "for the use of the *spouse*; or, if no spouse, the child or children; and, if no child or children, the next of kin of *the loser*." Tenn. Code § 29-19-105 (emphases added). A single "loser" can have only one "spouse," but "the loser" could have more than one "child," which is why the statute says "child or children." That language clearly evidences an understanding that the statute was authorizing a single claim to recover the losses

6

of an ***individual*** gambler "for the use of" ***that individual gambler's*** family.  *See*, *e.g.*, *Nat'l Mut. Fire Ins. Co.*, 578 S.W.3d. at 36 (interpreting "***the*** applicable statute of limitations" to mean a single statute and "***any*** applicable statute of limitations" to encompass additional statutes) (emphases added); *Higgenbottom v. Continental Cas. Co.*, 1994 WL 312871, at *2 (Tenn. Ct. App. July 1, 1994) ("[T]he term 'insured' [in the statute at issue] refers to each individual insured and not to the aggregate of insureds as the appellant's interpretation of the statute would require.  We note that the statute uses the singular insured and not the plural insureds.").

Moreover, § 29-19-105, by its terms, does not permit "any other person" to bring a claim unless "the loser" has not brought suit within 90 days of his or her loss.  Tenn. Code § 29-19-105 ("Any other person may, ***after the expiration of the ninety (90) days***," bring suit to "recover the amount of such money" lost by the loser, "for the use of" the closest family "of the loser") (emphasis added).  That provision cannot be reasonably read without a one-to-one correlation between the "other person" bringing the claim and "the loser," as courts throughout the country have repeatedly held in dismissing mass claims under similar statutes.  *See Langone v. Kaiser*, 2013 WL 5567587, at *4 (N.D. Ill. Oct. 9, 2013) (dismissing claim under Illinois statute because the statute "plainly states that a non-loser-plaintiff does not have a cause of action until the gambling loser has failed to bring suit within six months of the loss," and therefore the plaintiff "must allege that a specific loser lost a certain amount and failed to bring a claim for that amount within six months"); *Fahrner v. Tiltware LLC*, 2015 WL 1379347, at *6 (S.D. Ill. Mar. 24, 2015) ("Plaintiffs cannot allege the six months have passed or that they timely brought the claim without alleging the date of a loss and the amount of the loss.  Thus, ***plaintiffs must allege that a specific loser lost a certain amount of money on a certain date***.  Plaintiffs have failed to do that[.]") (emphasis added); *Sonnenberg v. Oldford Grp., Ltd.*, 2015 WL 1379505, at *6 (S.D. Ill.

Mar. 24, 2015) (same); *Humphrey*, 2007 WL 1797648, at *5 (dismissing claim under New Jersey statute because "[p]laintiff fails to identify **even one individual** who participated in [the alleged gambling], much less one who allegedly lost money to Defendants") (emphasis added).

In fact, in a recent case that Plaintiff's counsel brought against Zynga under Alabama's **identical** statute, a federal court observed that the statute's text contemplates a one-to-one ratio for recovery. Like § 29-19-105, Alabama's statute allows "[a]ny other person" to recover a gambler's losses "for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser." Ala. Code § 8-1-150(b). Plaintiff's counsel asserted a "mass" claim under that statute, but the court (in the course of remanding the case to state court on jurisdictional grounds) expressed "***serious doubt***" that such a claim was permitted under the statute. *Mills v. Zynga, Inc.*, 2023 WL 5198511, at *2 (N.D. Ala. 2023) (emphasis added). The court observed:

> [I]t *appears* that the statute permits a one-to-one ratio for recovery: one person may sue to recover the loss of a gambler and return it to the gambler's family. In other words, ***the wording of the statute does not seem to permit one person to recover multiple gambling losses for multiple families in the same action***[.]

*Id.* at *2 n.3 (emphasis on "appears" in original, all other emphases added).

The same reasoning applies to § 29-19-105. Just as the Alabama federal court suggested, Plaintiff's mass claim here would require an impermissible "forced interpretation" of § 29-19-105 that greatly expands the statute's scope beyond its plain meaning. *Kyle*, 98 S.W.3d at 664.

**B.      The Historical Purpose of the Statute Confirms that the Legislature Never Intended the Statute to Allow Mass Claims to Recover Strangers' Losses**

That mass claims are not permitted under § 29-19-105 is further evidenced by the statute's legislative purpose dating back to its enactment (in a predecessor statute) in 1858.

Tennessee's statute is not unique. Many states have them, and, while differing in some respects, they are largely similar. *Compare* Tenn. Code Ann. § 29-19-105, *with*, *e.g.*, Ala. Code

8

§ 8-1-150(b), Ky. Rev. Stat. Ann. § 372.040, Mass. Gen. Laws ch. 137 §1, N.J. Rev. Stat. § 2A:40-6, Ga. Code § 13-8-3(b), 720 Ill. Comp. Stat. 5/28-8(b), S.C. Code Ann. § 32-1-20. These statutes "derive from the 1710 Statute of Queen Anne, an English statute that authorized gambling losers and informers to sue to recover losses incurred" by the loser. *Humphrey v. Viacom, Inc.*, 2007 WL 1797648, at *3 (D.N.J. June 20, 2007). The Tennessee Attorney General has noted that § 29-19-105's predecessor "statute is almost a literal copy of portions of the Statute of Anne," and "legal principles similar to the Statute of Anne's provisions [are] included in" § 29-19-105. Op. Tenn. Att'y Gen. No. 04-046, 2004 WL 789813, at *2 (2004).

England adopted the Statute of Queen Anne in 1710 because, "[i]n the seventeenth and eighteenth century, gambling among the British gentry was rampant," and "the large transfers of property that often accompanied this gambling disrupted England's land-based aristocracy." Ronald J. Rychlak, *The Introduction of Casino Gambling: Public Policy and the Law*, 64 MISS. L.J. 291, 296 (1995). The Queen signed the Statute of Queen Anne in 1710 "to stabilize British society by refusing to enforce large gambling debts" and thereby "'protect the landed gentry from the consequences of their own folly.'" *Id.* at 297 & n.35 (citation omitted). The Tennessee Constitution of 1796 "effectively adopted the common law of England," and "the Statute of Anne, as part of that existing common law of England, was adopted as law in this state (similar to what occurred in most states)." Op. Tenn. Att'y Gen. No. 04-046, 2004 WL 789813, at *2.

Thus, § 29-19-105 and other states' similar statutes all "share a common origin and purpose" derived from the Statute of Queen Anne, which is "to prevent **gamblers and their families** from becoming destitute due to gambling losses—and thus becoming wards of the State—by providing a method for the gambler's **spouse**, **parent** or **child** to recover the lost money from the winner." *Humphrey*, 2007 WL 1797648, at *3 (emphasis added); *see also*

*Berkebile v. Outen*, 426 S.E.2d 760, 763 (S.C. 1993) ("The legislature adopted a policy to protect a citizen and ***his family*** from ***the gambler's*** uncontrollable impulses.") (emphasis added).[4]

Indeed, that purpose is reflected in the Tennessee Attorney General's opinion interpreting § 29-19-105: "Tennessee law provides that not only persons who lost money, but also ***their families***, may timely bring actions to recover [the loser's] losses[.]" 2004 WL 789813, at *4 (emphasis added). The Attorney General's interpretation, though not binding on this Court, "is entitled to considerable deference." *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995). It is clear that the legislative purpose of § 29-19-105 was not and is not to permit a third party to assert a mass claim for the losses of ***everyone in the state***, none of whom the plaintiff even claims to know. Nor does the statutory text provide for such a claim. *See supra* at 5-7.

Finally, the Tennessee Supreme Court has instructed that "[a court's] role" when interpreting a Tennessee statute "is to determine how a reasonable reader would have understood the text ***at the time it was enacted***." *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023) (emphasis added); *see also State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022) ("[W]e must decide how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.") (quotations and citation omitted); *Crotty v. Flora*, 676 S.W.3d 589, 608 (Tenn. 2023) (interpreting statute how the legislature would have understood it at enactment in 1975 because "[t]he legislature would not have had in mind the current situation"). To VGW's knowledge, when the statute was enacted in 1858, ***no*** right or procedure to bring a mass

---

[4] *See also* G. Robert Blakey, *The Development of the Law of Gambling 1776-1976* (Sept. 1976) at 47 n.17, *available at* https://www.ojp.gov/pdffiles1/Digitization/37369NCJRS.pdf (citing "Act of April 25, 1721, ch. 4, 2 (1702-1745), Laws of N.H. at 358-59" (referencing a New Hampshire colonial law that directly "spoke of a need to prevent the unnecessary impoverishment of the gambler's family")); *id*. at 48 (Massachusetts' colonial era statute "focused on problems of the habitual gambler who neglected his occupational and familial duties").

claim existed anywhere in this or any other state. Thus, the legislature could not possibly have intended the statute to permit a stranger to bring a mass claim for everyone's losses in the state.

### C. The Case Law Further Demonstrates that Mass Claims Are Not Permitted

Courts have also construed statutes like § 29-19-105 "narrowly in light of their history and purpose, in part because they provided a remedy in derogation of the common law." *Humphrey*, 2007 WL 1797648, at *4 (citing cases). At common law, a gambler could not recover his losses because he was deemed "in *pari delicto*" with the winner. *Whiteside v. Tabb's Ex'rs*, 3 Tenn. 383, 387 (1813); *see also* Op. Tenn. Att'y Gen. No. 04-046, 2004 WL 789813, at *2 ("[A]t common law, if a person unfairly loses at gambling, but voluntarily pays the losses with knowledge of the circumstances, there is no remedy in court to recover those losses.").

Tennessee Code § 29-19-105, enacted in a predecessor statute in 1858, "provided a remedy in derogation of the common law," *Humphrey*, 2007 WL 1797648, at *4, by allowing losers and their family members to recover the loser's gambling losses. Under Tennessee law, "statutes in derogation of the common law are to be strictly construed and confined to their express terms." *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809 (Tenn. 2015) (citation omitted). These well-established "principles of strict and narrow construction are particularly appropriate" where, as here, the plaintiff "seeks to recover unspecified losses to which [s]he has **no personal connection**." *Humphrey*, 2007 WL 1797648, at *4 (emphasis added).

Consistent with these principles of strict and narrow construction, no court has **ever** construed § 29-19-105 or any other state's similar statute to permit an individual plaintiff to bring a mass claim to recover the gambling losses of everyone in the state.

In fact, in decisions that dealt with claims asserted under § 29-19-105, the Tennessee Supreme Court and Court of Appeals have only ever recognized claims to recover the losses of a single gambler to give the money back to that gamblers' spouse or parent. *See Forrest v. Grant*,

11

79 Tenn. 305, 306 (1883) (§ 29-19-105's identical predecessor statute allowed husband to recover his wife's gambling losses); *Coles v. Morrow*, 128 Tenn. 550, 580 (1914) (§ 29-19-150's identical predecessor statute allowed adult children to recover their father's gambling losses); *Hall v. McCandless*, 14 Tenn. App. 528, 529 (1931) (§ 29-19-105's identical predecessor statute allowed wife to recover her husband's gambling losses); *Dunn v. Bell*, 85 Tenn. 581, 581 (1887) (same); *Pickard v. Berryman*, 24 Tenn. App. 263, 263 (1939) (§ 29-19-105's identical predecessor authorized minor son to recover his father's gambling losses).

Plaintiff cannot cite a single case where an individual plaintiff, acting under § 29-19-105 or a similar statute, was permitted to assert a mass claim for the losses of everyone in the state. There are none. But there are plenty of cases dismissing mass claims under other states' similar statutes, for failure to allege "who was the winner, who was the loser, when the loss took place, and the amount of money lost." *Langone*, 2013 WL 5567587, at *4; *see also Fahrner*, 2015 WL 1379347, at *6; *Sonnenberg*, 2015 WL 1379505, at *6; *Humphrey*, 2007 WL 1797648, at *5.

Courts have also refused to certify class claims under Alabama's identical statute because the statutory language clearly requires ***individualized proof of a person's loss***. *See Wright v. Dep't of Ala. Veterans of Foreign Wars*, 2010 WL 11569414, at *8 (N.D. Ala. Mar. 24, 2010) (the statute, which is identical to § 29-19-105, "does not permit the pooling of alleged gambling profits for the purpose of distributing those aggregate profits among the members of the class through a *cy pres* remedy [which] will not alleviate a plaintiff's burden of meeting statutory requirements or dispense with the necessity of individualized proof"); *Funliner of Ala., L.L.C. v. Pickard*, 873 So. 2d 198, 211 (Ala. 2003) (denying class certification in action under Alabama's statute because individual proof required for each loser's loss "and the amount of their losses").

12

Historical practice also offers important insight into the statute's intended scope. *See, e.g., Biden v. Neb.*, 143 S. Ct. 2355, 2371-72 (2023) (rejecting expansive definition of "modify" out of step with agency's prior, more modest modifications to student loan programs); *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 159-60 (2000) (rejecting FDA's novel interpretation that would allow FDA to regulate tobacco, "[c]ontrary to its representations to Congress since 1914"). Here, since § 29-19-105's enactment, ***not one claim has ever been made for the mass recovery sought here***. *Cf. United States v. Cooper Corp.,* 312 U.S. 600, 613-14 (1941) (in rejecting government's right to pursue treble damages, noting as "significant" that no such action had been initiated in the "fifty years during which the statute has been in force").

### D. The Legislature Cannot Have Intended Mass Claims to Be Permitted Under the Statute Because Such Claims Would Violate the Due Process Rights of the Losing Gamblers' Family Members for Whom Recovery is Intended

Even if § 29-19-105 were ambiguous as to whether mass claims are permitted, the Court must "adopt a construction which will sustain a statute and avoid constitutional conflict if any reasonable construction exists that satisfies the requirements of the Constitution." *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 529-30 (Tenn. 1993). This canon of statutory interpretation "militates against not only those interpretations that would render the statute unconstitutional but also those that would even raise serious questions of constitutionality." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247-48 (2012).

Plaintiff's reading of the statute as allowing mass claims to recover the losses of thousands of strangers raises serious questions of constitutionality because it would infringe upon the due process rights of the very people whom the statute was enacted to protect: the losing gambler's spouse, children, or other family. Plaintiff's complaint disclaims the class action procedures of Rule 23 of the Tennessee Rules of Civil Procedure. In fact, she specifically

13

states: "This suit, brought by an individual for the use of those named in the statute is not a class action pursuant to Rule 23 of the Tennessee Rules of Civil Procedure." Compl. ¶ 6. As a result, she is alleging that she does not need to qualify as a proper class representative under Rule 23 and does not outline any procedures by which the unnamed beneficiaries will be notified of the suit prior to recovery or given the opportunity to opt out. Plaintiff's attempt to avoid Rule 23 protections, which go to the heart of due process rights of non-parties, should not be allowed.

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court of the United States reviewed a challenge to the "opt out" procedure in Kansas's Class Action rule. In affirming the procedure, the Court outlined the minimum due process procedures required to protect the absent non-parties whose claims are being pursued:

> If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

*Id.* at 811-12.

The procedure envisioned by Plaintiff seeks to recover the money paid by Tennessee residents to play VGW's games, which would then bind all absent spouses, children, and next of kin to the recovery under § 29-19-105. Plaintiff may also be preempting the rights of the players to pursue their own claim under § 29-19-104, and again binding them to the result obtained. The procedure outlined in Plaintiff's complaint does not provide either group any notice of the

14

litigation, does not provide them any opportunity to opt out of this litigation, and does not provide any safeguards that Plaintiff will adequately represent the interests of the absent parties.

This complete failure to protect the due process rights of the absent parties is fatal to Plaintiff's claims here. The purpose of § 29-19-105 is to protect the interests of the spouse, children, or next of kin of a losing gambler. Plaintiff cannot be permitted to completely ignore the constitutional safeguards designed to protect these same persons.

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss the complaint with prejudice pursuant to Rule 12(b)(6) for failure to state a claim under Tennessee Code § 29-19-105.

Dated: January 22, 2024

Respectfully submitted,

_s/ Nathan L. Kinard_
Anthony A. Jackson (TN BPR# 014364)
Nathan L. Kinard (TN BPR# 035721)
CHAMBLISS, BAHNER & STOPHEL, P.C.
605 Chestnut Street, Suite 1700
Chattanooga, Tennessee 37450
Telephone: (423) 757-0203
Facsimile: (423) 508-1203
Email: bjackson@chamblisslaw.com
Email: nkinard@chamblisslaw.com

OF COUNSEL:

Behnam Dayanim (_pro hac vice_)
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: 202-339-8613
Email: bdayanim@orrick.com

Gregory D. Beaman (_pro hac vice_)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: 212-506-5000
Email: gbeaman@orrick.com

_Attorneys for VGW Holdings Ltd., VGW Holdings US, Inc., VGW US, Inc., and VGW Luckyland, Inc._

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January 2024, the foregoing document was served on counsel of record for Plaintiff Lauren Ewing, listed below, via email and certified mail:

Garth R. Segroves
113 West Moore Street
Tullahoma, Tennessee 37388
Telephone: 931.393.43 66
Facsimile: 931.259.4466
garth_segroves@att.net

Jeffrey L. Bowling
BEDFORD, ROGERS & BOWLING, P.C.
303 North Jackson Street
P.O. Box 669
Russellville, AL 35653-0669
Telephone: 256.332.2880
jeffbrbpc@bellsouth.net

D. Frank Davis
John E. Norris
Wesley W. Barnett
Dargan M. Ware
DAVIS & NORRIS, LLP
2154 Highland Avenue S.
Birmingham, AL 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com

*Counsel for Plaintiff Lauren Ewing*

*s/ Nathan L. Kinard*
Nathan L. Kinard